UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRENT GENDRON,

        Petitioner,

v.

        CASE NO. 05-CV-74787-DT
        HONORABLE AVERN COHN

BLAINE LAFLER,

        Respondent.
_____/

## MEMORANDUM AND ORDER DENYING PETITION
## FOR WRIT OF HABEAS CORPUS

### I. Introduction

This is a habeas case under 28 U.S.C. § 2254. Trent Gendron ("Petitioner"), a state prisoner currently confined at the Carson City Correctional Facility[1] in Carson City, Michigan, asserts that he is being held in violation of his constitutional rights. Petitioner was convicted of second-degree murder and possession of a firearm during the commission of a felony. Petitioner raises claims concerning the sufficiency of the evidence, the admission of alleged hearsay evidence, and the admission of other acts evidence. For the reasons that follow, the petition will be denied.

### II. Facts and Procedural History

Petitioner's convictions arise from the shooting death of Victor Lopez outside a bar called the Vernor Street Station in Detroit, Michigan during the afternoon on March

---

[1]At the time he filed this action, Petitioner was confined at the St. Louis Correctional Facility in St. Louis, Michigan where Respondent is the warden.

1

16, 2003. At trial, Detroit Police Officer Rodney Durham testified that he responded to the shooting at about 4:00 p.m. and found Lopez lying in a pool of blood. No weapon was recovered from the scene. On cross-examination, Officer Durham testified that he spoke to Daniel Ortiz, a bartender at the Vernor Street Station, at the scene. According to Durham's report, Ortiz told him that there had been two male perpetrators, one of whom was Petitioner. Ortiz described the second man in the car as a skinny white male in his early 20s. Ortiz indicated that he was inside the bar when Lopez went to the doorway and spoke with people. Ortiz then heard a gunshot, saw Lopez fall backward, and observed a car drive away. Ortiz described the car as a silver or blue 1988 Oldsmobile Cutless with tinted windows and provided a license plate. Officer Durham ran the plate through LEIN and discovered that the car was registered to Petitioner.

Daniel Ortiz testified that Victor Lopez was eating at the bar at approximately 4:00 p.m. on the day of the shooting. Ortiz saw Lopez standing by the open door of the bar speaking with someone in a car. When Lopez said something to him, Ortiz looked out the door and saw a man in a car arguing with Lopez. The passenger side of the car was closest to the door and a white guy was sitting in the driver's seat. Ortiz could not really say that Petitioner was the driver. Ortiz testified that when he asked Lopez with whom he was arguing, Lopez responded that it was Trent, the man who had hit "Anti" with a cue ball. Ortiz also recalled that Lopez told him that "Trent keeps coming around." When Ortiz went to the door and looked out, he saw a gray car pull up. Lopez then argued with the man in the car, and the man pulled out a gun and shot Lopez in the face. The man fired the gun through the passenger window. Ortiz testified that there was only one man in the car. When the police arrived, Ortiz gave them a

2

description of the car and the person he saw in the car whom he described as a skinny white male in his early 20s. Ortiz was unable to identify Petitioner in a photographic array conducted the next day.

Mellissa Barajas testified that she saw Petitioner, whom she had known since the previous summer, driving his car in the area near the bar at the time of the shooting.

Jose Villafane testified that he was standing in the vicinity of the bar around 4:00 p.m. on the day of the shooting. He saw Lopez standing at one of the doors and saw a gray car with a light gray top, tinted windows, and chrome rims driving in the area. When the car stopped near the bar door, he heard an argument and then a gunshot which he thought came from inside the car. Villafane identified Petitioner as the driver of the car.

Sarah Lopez, the victim's brother, testified that Anastasio Ruis, whose nickname was Anti, was her boyfriend and that she saw Petitioner hit him in the face with a cue ball at the Vernor Street Station on a prior occasion. She said that she told her brother about the incident.

Petitioner presented an alibi defense at trial. Karrie Belles testified that Petitioner and his sister, Melanie Murphy, were at her house from 2:30 p.m. until 5:30 p.m. on the day of the shooting. Melanie Murphy corroborated this testimony and also stated that she and Petitioner went to her house after leaving Belles' residence. Heather Gendron, another sister of Petitioner, testified that she was involved in a car accident while driving Petitioner's car on September 29, 2002 and that Petitioner subsequently sold the car to a man named Joey Muscat. David Honnycut, Petitioner's co-worker, testified that Petitioner was left-handed.

3

At the close of trial, the trial court found Petitioner guilty of second-degree murder and felony firearm. The trial court subsequently sentenced Petitioner to consecutive terms of 14 to 25 years imprisonment and two years imprisonment on those convictions.

Following sentencing, Petitioner filed an appeal as of right challenging the sufficiency of the evidence, the admission of alleged hearsay evidence, the admission of other acts evidence, and the scoring of the state sentencing guidelines. The Michigan Court of Appeals affirmed his convictions and sentence. *People v. Gendron*, No. 251509, 2005 WL 473946 (Mich. Ct. App. March 1, 2005) (unpublished). Petitioner then filed an application for leave to appeal with the Michigan Supreme Court raising the sufficiency of the evidence, the hearsay evidence, and other acts evidence claims, but not the sentencing claim. The Michigan Supreme Court denied leave to appeal. *People v. Gendron*, 474 Mich. 873, 703 N.W.2d 811 (2005).

Petitioner dated his initial petition for writ of habeas corpus on December 12, 2005 and raised claims concerning the sufficiency of the evidence, the admission of alleged hearsay evidence, the admission of other acts evidence, and sentencing. The Court dismissed the petition without prejudice for failure to fully exhaust state remedies as to the sentencing claim. Petitioner then moved to re-open the case to proceed only on the exhausted claims. The Court granted the motion and re-opened the case. Respondent has filed an answer, asserting that the petition should be denied for lack of merit. Petitioner has filed a reply.

### III. Standard of Review

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d); *Harpster v. State of Ohio*, 128 F. 3d 322, 326 (6th Cir. 1997).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. An "unreasonable application" occurs when the state court identifies the correct legal principle from a Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

## IV. Analysis

### A. Sufficiency of the Evidence

Petitioner first claims that he is entitled to habeas relief because the prosecution presented insufficient evidence to support his convictions for second-degree murder and felony firearm. Specifically, Petitioner asserts that the prosecution failed to present sufficient evidence to prove his identity as the perpetrator of the shooting beyond a

5

reasonable doubt. Respondent contends that this claim lacks merit.

In *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), the Supreme Court established that a federal court's review of a sufficiency of the evidence claim must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." The Court must view this standard through the framework of 28 U.S.C. § 2254(d). *See Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). The *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n. 16. "The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim." *Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003) (citation omitted).

To establish the offense of second-degree murder under Michigan law, the prosecution must prove: (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse. *See* Mich. Comp. L. § 750.317; *People v. Goecke*, 457 Mich. 442, 463-64; 579 N.W.2d 868 (1998). To prove malice, the prosecution must establish that the defendant had the intent to kill, the intent to cause great bodily harm, or the intent to do an act in want and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm. *Id.* at 464. Intent may be inferred from all the facts and circumstances, including circumstantial evidence. *See, e.g., People v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d 177 (1993). Under Michigan law, the elements of felony firearm are that the defendant carried or possessed a firearm during the commission of, or the attempt to commit, a felony. *See* Mich. Comp. L. § 750.227b; *People v. Avant*, 235 Mich. App. 499, 505,

597 N.W.2d 864 (1999).

Applying the *Jackson* standard, the Michigan Court of Appeals carefully reviewed the evidence and found that the prosecution presented sufficient evidence to support Petitioner's convictions, stating in relevant part:

> At trial, the bartender of the bar, outside of which the shooting took place, testified that he observed [the victim] arguing with a person in a car through the bar's open door. The bartender further testified that, after the car drove off, the victim reentered the bar, at which point the bartender asked the victim about the identity of the person with whom he had been arguing. The bartender testified that the victim responded, "It was Trent, the guy that hit Anti with the Q-ball in his mouth." FN1 The bartender also testified that, after this, the victim said, "Trent keeps coming around." The bartender then stated that the same car returned and the victim again began to argue with the driver. He further stated that, during that argument, the driver pulled out a gun and shot the victim in the face.
>
> FN1. The victim's sister testified that this was a reference to an incident that occurred approximately one year earlier, where defendant hit her boyfriend, whose nickname was Anti, in the face with a pool ball. The victim's sister further testified that, although her brother did not witness the incident, she told her brother about it.
>
> Another witness testified that she lived near the bar and that she knew defendant and saw him driving his car near the bar on four separate occasions on the day of the murder. She testified that after the third time she observed defendant driving his car near the bar, she heard ambulances. Finally, a third witness testified that he was standing on a street corner near the bar and saw a car drive past the bar, make a u-turn, and stop in front of the bar's door with the passenger side facing the bar. The third witness testified that he heard an argument and then heard a gunshot from in the car. This witness positively identified defendant as the driver of the car that stopped in front of the bar.
>
> Drawing all reasonable inferences from the evidence and making all credibility choices in support of the verdict, we find that there was ample evidence provided to support the trial court's finding that defendant was the person who drove up to the front of the bar, engaged in a verbal argument with the victim, and then shot and killed him. Defendant's contention that this identification evidence was weak and did not warrant a conviction in light of his strong alibi defense does not alter our conclusion. A trial judge, as trier of fact, has the duty to weigh the

7

testimony and assess the credibility of the witnesses, *People v Snell*, 118 Mich App 750, 755; 325 NW2d 563 (1982), and an appellate court must defer to the trial court's resolution of factual issues, especially where it involves the credibility of a witness. *People v Cartwright*, 454 Mich 550, 555; 563 NW2d 208 (1997). The trial court clearly did not believe defendant's alibi witnesses and we decline defendant's invitation to reevaluate the trial court's credibility assessment.

*Gendron*, 2005 WL 473946 at *1-2.

The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or of the facts in light of the evidence. The evidence at trial, including Daniel Ortiz's testimony regarding Victor Lopez's statement identifying Petitioner as the person with whom he was arguing, Mellissa Barahas' testimony identifying Petitioner's car as being in the area near the shooting, and Jose Villafane's testimony identifying Petitioner as the driver of the car that stopped in front of the bar, provided sufficient evidence to support Petitioner's second-degree murder and felony firearm convictions.

Petitioner's insufficient evidence claim essentially challenges credibility of the testimony and the inferences drawn from the evidence at trial. However, it is well-settled that "[a] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983). It is the job of the fact-finder, not a federal habeas court, to resolve evidentiary conflicts. *See Jackson*, 443 U.S. at 326; *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002). Given the evidence at trial, a rational trier of fact could have found the elements of second-degree murder and felony firearm, and concluded that

Petitioner was the perpetrator of the shooting, beyond a reasonable doubt. Habeas relief is not warranted on this claim.

### B. Admission of Hearsay Evidence

Petitioner next asserts that he is entitled to habeas relief because the trial court erred in admitting hearsay evidence regarding what victim Victor Lopez told witness Daniel Ortiz prior to the shooting. The trial court admitted the statements under the present sense impression exception to the hearsay rule. Respondent contends that this claim lacks merit.

As an initial matter, alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Only when an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness," may it violate due process and warrant habeas relief. *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

The Michigan Court of Appeals concluded that the trial court did not abuse its discretion in admitting the victim's statements to Ortiz as a present sense impression as a matter of Michigan law. *See Gendron*, 2005 WL 473946 at *2-3. To the extent that Petitioner challenges this ruling and asserts that the trial court erred in admitting the statement as a present sense impression under the Michigan Rules of Evidence, he merely alleges a violation of state law which does not entitle him to federal habeas relief. *See, e.g., Wheeler v. Jones*, 59 Fed. Appx. 23, 28 (6th Cir. 2003).

Moreover, Petitioner is not entitled to relief on any claim that the admission of the evidence violated his confrontation rights. The Confrontation Clause of the Sixth

9

Amendment guarantees a criminal defendant the right to confront the witnesses against him. *Davis v. Alaska*, 415 U.S. 308, 315 (1973). The Sixth Amendment protections are not so broad, however, as to exclude the admission of certain hearsay statements against a criminal defendant despite his or her inability to confront the declarant at trial. *See Maryland v. Craig*, 497 U.S. 836, 847-48 (1990). In *Crawford v. Washington*, 541 U.S. 36, 54 (2004), the Supreme Court held that the *testimonial* statement of a witness who does not appear at trial is inadmissible unless the witness is unavailable to testify and the defendant has had a prior opportunity to cross-examine the witness. Testimonial statements include preliminary hearing testimony, grand jury testimony, prior trial testimony, and statements made during police interrogations. *Crawford*, 541 U.S. at 54. Testimonial statements do not include remarks made to family members or acquaintances, business records, or statements made in furtherance of a conspiracy. *Id.* at 51-52, 56; *United States v. Martinez*, 430 F.3d 317, 328-29 (6th Cir. 2005); *see also United States v. Stover*, 474 F.3d 904, 912-13 (6th Cir. 2007). Here, Victor Lopez's statements to Daniel Ortiz, an acquaintance at the bar, were non-testimonial in nature. *Crawford* is thus inapplicable to the matter at hand.

Furthermore, the Supreme Court has made clear that the Confrontation Clause is not implicated, and need not be considered, when non-testimonial hearsay is at issue. *See Davis v. Washington*, _ U.S. _, 126 S. Ct. 2266, 2274 (2006). Petitioner has not shown that the admission of the challenged hearsay violated his confrontation rights or otherwise rendered his trial fundamentally unfair. Habeas relief is not warranted on this claim.

C. Admission of Other Acts Evidence

Lastly, Petitioner asserts that he is entitled to habeas relief because the trial court admitted testimony from Sara Lopez about Petitioner's assaultive behavior on a prior occasion before the shooting. Petitioner asserts that such evidence was more prejudicial than probative and raised an improper propensity inference. Respondent contends that this claim is not cognizable on federal habeas review and lacks merit.

As noted, alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *See Estelle*, 502 U.S. at 67-68; *Serra*, 4 F.3d at 1354. Only when an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness," may it violate due process and warrant habeas relief. *See Bugh v. Mitchell*, 329 F.3d at 512. The Supreme Court has declined to hold that similar "other acts" evidence is so extremely unfair that its admission violates fundamental conceptions of justice. *See Dowling v. United States*, 493 U.S. 342, 352-53 (1990).² Thus, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh,* 329 F.3d 496, 512 (6th Cir. 2003). Consequently, there is no Supreme Court precedent that the state court decisions could be deemed "contrary to" under 28 U.S.C. § 2254(d)(1). *Id.* at 513; *see also Adams v. Smith*, 280 F. Supp. 2d 704, 716 (E.D. Mich. 2003). Petitioner's claim must fail.

---

²While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997), it has not explicitly addressed the issue in constitutional terms.

Furthermore, even if Petitioner states a cognizable claim, he is not entitled to relief. The Michigan Court of Appeals upheld the trial court's determination that the disputed evidence was properly admitted as a present sense impression, was relevant to establish Petitioner's identity, and was not more prejudicial than probative. The court also found that any error with regard to notification for the use of such evidence was harmless. See Gendron, 2005 WL 473946 at *3-5.

The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application of the law or the facts. The other acts evidence was properly admitted under state law as a present sense impression and was relevant to establish Petitioner's identity as the shooter. The prosecutor did not make a character or propensity argument, and the trial court was the finder of fact. A bench trial judge is presumed to follow the law and to consider only relevant and admissible evidence in reaching a verdict. See Brown v. Pitcher, 19 Fed. Appx. 154, 157 (6th Cir. 2001). Petitioner has not shown that the admission of the other acts evidence rendered his trial fundamentally unfair. Habeas relief is not warranted.

### V. Conclusion

For the reasons stated above, Petitioner is not entitled to habeas relief on the claims contained in his petition. Accordingly, the petition is DENIED.

SO ORDERED.

**Dated: July 10, 2007**             s/Avern Cohn
                                               **AVERN COHN**
                                               **UNITED STATES DISTRICT JUDGE**

## CERTIFICATE OF SERVICE

**I hereby certify that a copy of the foregoing document was mailed to the attorneys of record and Trent Gendron, 471387, Carson City Correctional Facility P. O. Box 5000, Carson City, MI 48811-5000 on this date, July 10, 2007, by electronic and/or ordinary mail.**

                                        **s/Julie Owens**
                                        **Case Manager, (313) 234-5160**